UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Paul Peters** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | Civ. Action No. 4:12-cv-3596 |
| | § | |
| **Bentwater Yacht and** | § | |
| **Country Club, Ltd.;** | § | |
| **And Does I through X** | § | |
| | § | |
| **Defendants.** | § | |

## **MEMORANDUM & ORDER**

The case consists of claims brought by a property owner against a property owners association of which he is a member. Before the Court is Defendants' (Bentwater Yacht and Country Club ("BYCC") and Does I through X, collectively "Defendants") Motion for Summary Judgment (Doc. No. 231), Plaintiff Paul Peters' ("Plaintiff" or "Peters") Rule 56(d) Motion (Doc. No. 236), Plaintiff's Request for a Hearing (Doc. No. 229), and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 232). After reviewing the motions, responses, and the applicable law, the Court GRANTS Defendants' Motion for Summary Judgment, DENIES Plaintiff's Motion for Partial Summary Judgment, DENIES Plaintiff's 56(d) Motion, and DENIES Plaintiff's request for a hearing.

**I. BACKGROUND**

The following facts, presented by Defendants in their summary judgment motion, are incorporated by Plaintiff in his motion as well. On February 8, 2002, Peters purchased a vacant lot at 666 Edgewater in Bentwater, a planned development subdivision in

1

Montgomery County, Texas. The deed restrictions applicable to the lot require that its owner maintain a BYCC membership, which Peters applied for and was granted in 2002. (Gonzales Aff., Doc. No. 226-1, pp.3-8.)

In 2005, Peters executed in favor of BYCC an authorization agreement permitting debits for his country club dues and charges from his checking account. (Gonzales Aff., Doc. No. 226-1, p.22.) Plaintiff paid the country club dues and other charges applicable to his country club membership by this automatic debit from March 2005 through April 2011, when he notified his bank to permit no more automatic debits by BYCC. (Gonzales Aff., Doc. No. 226-1.)

On November 30, 2004, Plaintiff's wife, Angela Peters, purchased a residence in Bentwater located at 254 Creekwood West, with the legal description of Lot 8, Block 1, Section 39. (Gonzales Aff., Doc. No. 226-1, p.19-21.) Like the deed restrictions for the Edgewater lot, the Declaration for Section 39 also required that each property owner maintain a BYCC membership. (Gonzales Aff., Doc. No. 226-1, pp. 9-15.) However, Angela Peters, who is not a party to this suit, has paid only $74.38 as dues since purchasing the residence, which was collected from funds she paid at the closing. (Gonzales Aff., Doc. #226-1, pp.19-21.)

On March 2, 2010, BYCC advised Angela Peters that her use of the country club facilities and that of her family was being suspended until Angela Peters' account was brought current. (Gonzales Aff., Doc. #226-1, pp. 1-2.) In spite of this notice, Plaintiff continued to pay the dues for his country club membership because of the automatic debit authorization he had given BYCC in 2005. Plaintiff did not terminate the authorization until May 2011, and has not paid country club dues since then.

On June 25, 2011, Bentwater Property Owners Association, Inc. filed in the real property records of Montgomery County an instrument entitled "Notice of Assessment Lien." The instrument concerned Angela Peters' property at 254 Creekwood West and gave notice of a lien in favor of the property owners' association, pursuant to the subdivision deed restrictions, "as a result of a delinquency of secured charges concerning the property."

In May 2011, Peters, a Hawaii resident, sued Defendants in the Federal District Court of Hawaii, under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, ("FDCPA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, ("RICO"). By an order dated September 12, 2012 (Doc. No. 200), the Federal District Court of Hawaii severed Plaintiff's claims against BYCC premised upon the Fair Debt Collection Practices Act from his remaining state law claims, granting summary judgment to Defendant with respect to the FDCPA claims. Plaintiff is now appealing that decision to the Ninth Circuit and has filed a motion under 60(b), asking the Federal District Court of Hawaii for relief.

In October 2011, the parties stipulated and agreed to dismiss the RICO claim without prejudice. Specifically, the RICO claim asserted by Plaintiff was dismissed, with leave to amend if this action was transferred to the Fifth Circuit. (Doc. No. 243-1.) Plaintiff has not reasserted his RICO claim. The remaining state law claims were transferred pursuant to 28 U.S.C. 1404(a) to the Southern District of Texas, Houston Division. The Federal District Court of Hawaii indicated in its order granting transfer that the remaining claims were state law claims of theft, wrongful lien, and breach of contract.

**II. LEGAL STANDARD**

**A. Summary Judgment**

Summary judgment is warranted when a party establishes that there is no genuine dispute about any material fact and the law entitles the party to judgment. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. Fed. R. Civ. P. 56(a), *Willis v. Roche Biomed. Lab.,* 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).

Furthermore, the summary judgment standard "provides that the mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). While all justifiable inferences should be drawn in the nonmovant's favor, conclusory affidavits will not suffice to create or negate a genuine issue of fact. *Anderson,* 477 U.S. at 255; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Circ. 1986).

**B. Rule 56(d)**

Rule 56(d) allows for a delay in summary judgment to facilitate discovery when the non-movant cannot adequately oppose summary judgment at that time. *Raby v. Livingston,* 600 F.3d 552, 561 (5th Cir.2010). A motion under the rule "must set forth a plausible basis for believing that specified facts, susceptible of collection within a

reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (citing *C.B. Trucking, Inc. v. Waste Mgmt. Inc.,* 137 F.3d 41, 44 (1st Cir.1998)) (internal quotation marks omitted).

Rule 56(d) discovery motions are "broadly favored and should be liberally granted" because the rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Hinojosa v. Johnson,* 277 Fed. Appx. 370, 375 (5th Cir. 2008) (quoting *Culwell v. City of Fort Worth,* 468 F. 3d 868, 871 (5th Cir. 2006)). However, "[i]f it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby,* 600 F.3d at 561 (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 720 (5th Cir.1999)) (internal quotation marks omitted).

## III. ANALYSIS

### A. Defendants' Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment

**1. Theft**

Defendants move for summary judgment on the remaining state law claims: theft, wrongful lien, and breach of contract. Plaintiff alleges a theft claim under the Texas Theft Liability Act, arguing that the BYCC unlawfully appropriated and exerted unauthorized control over Plaintiff's money and property, with the further intent to permanently deprive Plaintiff of such monies. Plaintiff's claim is based upon allegations that BYCC debited Plaintiff's checking account 1) for his country club dues (during the period in which his membership was suspended because of his wife's delinquency in payments), and 2) for employee holiday bonuses. Defendants argue that Plaintiff consented to any

automatic withdrawals from his checking account, and, as a result, he has no cause of action under the Texas Theft Liability Act.

Plaintiff does not dispute that he signed an authorization permitting BYCC to initiate debit entries from his checking account for monthly country club charges and that his country club dues were paid by automatic debits from February 22, 2005 through April 30, 2011. Additionally, Defendants point to Article 9.2 of the BYCC Rules and Regulations, which states that "a Member who has been suspended pursuant to these Bylaws shall be required to pay monthly dues applicable to his or her membership classification following their [sic] effective date of suspension." (Doc. No. 229-1, p. 15.) Thus, until Plaintiff withdrew his consent to continue the automatic withdrawals, he was acting in accord with his obligation to continue paying his membership dues in spite of the suspension of his privileges.

Plaintiff gave written authorization to his bank to enable BYCC to debit funds from his account. Thus, Plaintiff's argument that he did not consent to the automatic withdrawals is not persuasive. *See Gronberg v. York*, 568 S.W.2d 139, 145 (Tex. Civ. App. 1978) (appellee did not have conversion action where he had knowledge funds were being deducted from his earnings for a pension fund). Plaintiff had knowledge that he was paying for a country club membership, and also had knowledge of the employee holiday gift fund. Funds had been debited from his account for the employee holiday bonus fund without complaint in November 2005, 2006, 2007, 2008, and 2009. Section 31.03(b)(1) of the Texas Penal Code requires that appropriation of property must be "without the owner's effective consent." After authorizing direct debits from his account,

6

Plaintiff did not object to the withdrawals, and thus consented and permitted those withdrawals to continue.

Plaintiff argues, both in his response and his motion for partial summary judgment, that the BYCC's claim for violations of the deed restriction against Angela and Paul Peters is barred by the statute of limitations. A four-year statute of limitations is controlling in suits to enforce restrictive covenants. *Schoenhals v. Close*, 451 S.W.2d 597, 599 (Tex. Civ. App—Amarillo 1970, no writ.); *Air Park-Dallas Zoning Comm. V. Corw-Billingsley Airpark, Ltd.,* 109 S.W.3d 900, 911 (Tex. App. Dallas 2003). A breach of contract claim accrues at the time of breach. *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002). Plaintiff argues that the cause of action accrued to BYCC when Angela Peters refused to get the second membership and did not pay membership fees in 2004. Thus, Plaintiff claims that the four-year limitations would have expired sometime in 2008.

Defendants argue that a statute of limitations defense can be asserted only by a party against whom a claim is brought. Peters, as the Plaintiff, is not entitled to assert an affirmative defense applicable to a claim that Defendants have not brought. Although there is no prior case exactly on point, which establishes that a statute of limitations may not be asserted when there is no judicial claim at issue, the Court of Appeals of North Carolina considered an argument that a four-year statute of limitations barred arbitration of a certain claim. *Cameron v. Griffith*, 91 N.C. App. 164, 165, 370 S.E.2d 704 (1988). The Court found that the limitations period stated in the statute "applied only to an action which is a judicial proceeding" and an arbitration is neither an action or a judicial proceeding. *Id.* Similarly, Defendants argue that BYCC did not lose its right to enforce

7

its published rules because it elected to enforce the restrictions through non-judicial means. Defendants also point out that the statute of limitations does not bar judicial enforcement of any claims that have become due and owing within the last four years because the contract calls for periodic payments.

Unlike the statute of repose, the statute of limitations does not extinguish claims. *Gomez v. Pasadena Healthcare Management,* 246 S.W.3d 306, 313 (Tex. App.-Houston [14th Dist.] 2008, no pet.) ("when a plaintiff fails to sue within the period provided by a statute of limitations, the claim still exists"). "Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action." *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 261 (Tex.1994). Repose then differs from limitations in that repose not only cuts off rights of action after they accrue, but can cut off rights of action before they accrue. . *Holubec v. Brandenberger,* 111 S.W.3d 32, 37 (Tex.2003). And while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time. *See Trinity River Auth.,* 889 S.W.2d at 261; *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009)

Thus, while a statute of limitation could prevent the judicial enforcement of Defendants' rights, Defendants would be permitted to utilize non-judicial channels, such as the suspension of Ms. Peters' membership, to enforce its contract. Additionally, Plaintiff does not provide any authority as to why the statute of limitations is relevant here. Defendants are not suing Angela Peters for any delinquency in payments. Because Defendants did not sue Angela Peters, but instead pursued a non-judicial remedy of

8

suspending her and her family's membership privileges, the Court does not find the statute of limitations to be relevant.

Even if the Court were to consider the statute of limitations, it would not bar the entirety of Defendants' claims. The Court finds that the limitation period would begin to run anew for each particular payment as it became due and payable. *See Townewest Homeowners Ass'n, Inc. v. Warner Communication, Inc.,* 826 S.W.2d 638 Tex. App.—Houston [14th Dist.] 1992, no writ) (a new cause of action accrued each time the cable company failed to make its quarterly payment to homeowner's association); *F.D. Stella Products Co. v. Scott,* 875 S.W. 2d 462 (Tex. App. 1994) (for breach of contract of equipment lease that required fixed, periodic payments, a separate cause of action accrued for each missed payment). Plaintiff argues in his reply that the deed restriction does not contain the elements of an enforceable installment contract. The deed restriction does not provide a fixed price or quantity of services. Additionally, Plaintiff contends that BYCC can change the increased monthly dues without justification. He further claims that the contract is not legally binding because its terms are not sufficiently defined.

Defendants argue that the statutory requirement for a retail sales installment contract which Plaintiff cites, Section 345.051 of the Texas Finance Code, is inapplicable. Section 345.051 defines a "retail installment contract" as an instrument evidencing a "retail installment transaction," which is defined as "a transaction in which a retail buyer purchases goods or services from a retail seller…" BYCC's deed restriction does not constitute a retail installment contract because BYCC does not regularly sell goods and services. Texas law establishes that, as to installment contracts not involving retail sales, the statute of limitations begins to run on each missed installment, regardless

9

of whether the contract was formed more than four years ago. In *Spin Doctor Golf, Inc. v. Paymentech, L.P.,* 296 S.W. 3d 354, 362 (Tex. App.—Dallas 2009, pet. denied), Paymentech, a credit card processing company, entered into an installment contract with Spin Doctor, a golf club manufacturer. Paymentech argued that the continuing contract exception did not apply because the payments varied based on Spin Doctor's credit card sales, and that only an installment contract with fixed periodic payments constituted a continuing contract. The court disagreed, holding that the parties' agreement constituted a continuing contract and claims based on breaches within the past four years were not barred by limitations. A fixed quantity or price is not necessary to have an enforceable installment contract. Thus, even if this Court were to consider the statute of limitations to be relevant, the consideration of any missed payments over the last four years would not be barred.

The Court finds that Defendants are entitled to summary judgment, dismissing with prejudice Plaintiff's claim under the Texas Theft Liability Act. Thus, the Court denies Plaintiff's Motion for Partial Summary Judgment, which requests the Court to find that the statute of limitations bars BYCC's claim. The Court notes Defendants' request for attorneys' fees, pursuant to § 134.005(b), which provides that the prevailing party "shall be awarded court costs and reasonable and necessary attorney's fees." Defendants state that they have incurred over $17,000 in costs, 30% of which is attributable to Plaintiff's claim under the Theft Liability act. The Court requests Defendants to submit a separate motion for attorney's fees, and will defer a ruling until then.

**2. Wrongful Lien**

Next, Defendants argue that they are entitled to summary judgment on Plaintiff's claim of wrongful lien. Plaintiff brings his claim under § 12.002 of the Texas Civil Practice and Remedies Code, which provides that:

> (a) A person may not make, present, or use a document or other record with:
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property…

Defendants first argue that, because Angela Peters is the sole owner of record, she is the only party authorized by statute to bring a claim for damages. Section 12.003 provides that those who may bring a claim are:

> (8) in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property, the obligor or debtor, or a person who owns an interest in the real or personal property.

Defendant asserts that Peters has no ownership interest and no standing to bring a claim for fraudulent lien concerning the property his wife owns, at 254 Creekwood West. Plaintiff responds that, because of the community property presumption, he has standing, and that Defendants' motion offers no evidence to overcome the presumption that Plaintiff would have an interest. Texas is a community property state in which there is a statutory presumption that land acquired during a marriage is community property. *Davis v. Duncan*, 102 S.W.2d 287, 288 (Tex. Civ. App. 1937). Without further evidence that the house is Ms. Peter's separate property, the Court finds Plaintiff to be included within the definition of people who may bring a claim.

Defendants next argue that the notice of assessment was filed by Bentwater Property Owners Association, Inc. ("BPOA") and not by BYCC. Accordingly, Defendants argue that BYCC did not "make, present, or use a document or other record…" as required by § 12.002 for liability. Plaintiff does not refute this argument directly, and, in fact, acknowledges that Bentwater Property Owners Association recorded the lien for the amount it claims was due to BYCC. Plaintiff proceeds to argue that Defendants lack an interest on which to claim a lien right. However, Defendants are not asserting a right; it is Peters who has asserted a claim against Defendants. The Court finds that Plaintiff cannot recover from Defendants because Defendants do not meet the requirements of § 12.002 for liability.

Even if Plaintiff had alleged a fraudulent lien claim against the appropriate party, the Court finds there is no genuine issue of material fact to demonstrate that the lien was—in fact—fraudulent. The party asserting that a claimed lien is fraudulent has the burden to prove the statutory elements. *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex.App. Dallas 2008 no pet.). To establish a fraudulent lien in this case, Peters is required to show that Defendants (1) made, presented, or used a document with knowledge that it was a fraudulent lien; (2) intended the document be given legal effect; and (3) intended to cause Peters financial injury. Peters alleges that Defendants recorded a false and misleading lien. However, the fact that Plaintiff might dispute the amount charged to his wife's account with BYCC, or find the suspension of his own membership services unfair, does not make the notice of assessment fraudulent. Furthermore, there is no indication or evidence that the document was filed with knowledge that it was fraudulent,

or with intent to cause injury. Defendants are entitled to summary judgment with respect to Plaintiff's wrongful lien claim.

### 3. Breach of Contract

Finally, Plaintiff argues that Defendants breached their membership polices by suspending his membership, and requiring his wife to acquire a duplicate membership. Defendants argue that BYCC at all times provided membership services in accord with its contract with Peters. Plaintiff's use of the club was suspended because an immediate family member had an account that had been in default for more than 90 days. It is undisputed that Plaintiff signed a membership application, in which he agreed that he had

> received the Membership Policies applicable to this membership, which are incorporated herein by reference. If elected to membership, I hereby agree that my use of the Club and privileges under the membership are subject to the terms, conditions, and restrictions set forth therein. (Doc. No. 229, p. 20)

The BYCC membership policies specifically provide in Article 8.2(c) that "any membership account more than ninety (90) days delinquent may be revoked or privileges pursuant to same suspended…" The membership policies further provide that a "Member who has been suspended pursuant to these Bylaws shall be required to pay monthly dues applicable to his or her membership classification following the effective date of suspension…During the period of suspension, the Member and his or her Family shall have no right or privileges to use the Facilities." It is undisputed that Plaintiff's membership account was current on March 2, 2010, and that Angela Peters' account had been overdue for a period longer than 90 days. Based on the language in the contract, BYCC argues that it was not in breach of its contractual obligations to Plaintiff, because it suspended use of club facilities when there was a violation of the membership policies.

Plaintiff argues that the Defendants had no contractual basis to suspend Plaintiff's membership rights because of his wife's refusal to obtain a duplicate membership. Plaintiff argues that the Rules and Regulations do not allow for suspension, since suspension is limited to criminal acts, destruction of property, and violation of the rules and payment delinquency. Because there is no allegation that Plaintiff himself committed any wrongful acts, Plaintiff argues his membership should not have been suspended.

Although Plaintiff did not break the membership rules directly, Defendants still had a contractual basis to suspend his membership. The membership rules Peters agreed to made it clear that all family members would lose their privileges and be subject to suspension if the owner was overdue for more than 90 days. The deed restrictions do not exempt an owner of more than one lot from the membership requirement for each lot. The Court finds that BYCC was not in breach of its contractual obligations to Plaintiff because it exercised its rights to suspend use of the club facilities when there was a violation of the policies. The Court grants Defendants summary judgment on Plaintiff's breach of contract claim.

**B. Plaintiff's Rule 56(d) Motion and Plaintiff's Motion for a General Hearing**

Plaintiff has filed a motion asking for the continuance or denial of Defendant's motion to allow Plaintiff to engage in further discovery. (Doc. No. 236.) After careful review of the motions, if it "appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby,* 600 F.3d at 561 (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 720 (5th Cir.1999)) (internal quotation marks omitted); *see also Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized

that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment."). The Court finds that additional discovery would not create a material fact dispute, and denies Plaintiff's 56(d) Motion.

Plaintiff has also requested a hearing of his summary judgment motion. (Doc. No. 229). The Court has discretion under the local rules to grant or deny a request for oral arguments. (See Rule 7.5A and Rule 7.8, Local Rules of the United States District Court for the Southern District of Texas). As the Court finds it can resolve the motion for summary judgment on the pleadings and briefs, Plaintiff's request for hearing is denied.

## IV. CONCLUSION

The Court **GRANTS** summary judgment to Defendants on all remaining state claims—theft, wrongful lien, and breach of contract. The Court **DENIES** Plaintiff's partial summary judgment, arguing that the statute of limitations bars Defendants' claims. The Court **DENIES** Plaintiff's Rule 56(d) motion and **DENIES** Plaintiff's request for a hearing.

**IT IS SO ORDERED.**
**SIGNED** at Houston, Texas on this the 31st day of May, 2013.

_____
**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**